# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| BRENDAN BURKE, | : | |
| | : | CIVIL ACTION No.: |
| Plaintiff, | : | |
| v. | : | |
| | : | |
| ROSS UNIVERSITY SCHOOL OF | : | |
| MEDICINE, DEVRY UNIVERSITY, INC., | : | |
| and DEVRY EDUCATION GROUP, INC | : | |
| Defendants. | : | JANUARY 25, 2016 |

## COMPLAINT

Plaintiff, Brendan Burke ("Mr. Burke" or "Plaintiff"), through his undersigned counsel, alleges for his complaint as follows:

## NATURE OF THE CASE

This case concerns the Defendant's deliberate indifference to Plaintiff's federal civil rights. Plaintiff, a former medical student at Defendant Ross University School of Medicine ("RUSM"), is a person with a disability owing to a 2001 accident that resulted in a traumatic brain injury and an associated neuropsychiatric condition. Plaintiff made a timely request for accommodation to Defendant in the form of a request for an extension of time to complete his final degree requirement and graduate from medical school. Defendant instead dismissed Plaintiff, claiming he had failed to complete all degree requirements within seven years of matriculation. In so doing, Defendant not only acted with deliberate indifference to Plaintiff's request for an accommodation, but also invoked an alleged rule that has no basis in academic or professional requirements and which had not existed during the entirety of the time Plaintiff was an enrolled student engaged in coursework at Defendant. Further, by preventing Plaintiff from sitting for the United States Medical Licensing

Examination ("USMLE") Step 2 Clinical Knowledge ("CK") exam on or before March 14, 2016, Defendant's dismissal has the effect of rendering Plaintiff's passing scores on previous USMLE steps – as well as all Plaintiff's didactic and clinical course work in medical school – invalid and worthless, precluding him from obtaining a medical degree or becoming licensed, notwithstanding previous tuition payments amounting to several hundred thousand dollars.  Plaintiff accordingly brings this lawsuit to compel Defendant certify Plaintiff and permit him to sit for the USMLE Step 2 CK examination on or before March 14, 2016, the deadline imposed by the National Board of Medical Examiners for Plaintiff to complete all USMLE steps.  Moreover, at least three to seven weeks are required to register to sit for the exam.  The requested relief would not constitute a modification of the nature and substance of RUSM's academic program.  Further, Plaintiff's request for additional time to complete degree requirements is precisely the form of remedy considered reasonable under the law.

## PARTIES

1.      Plaintiff, Brendan Burke is a Connecticut citizen domiciled in Darien, CT.

2.      Defendant RUSM is a private for-profit medical school located in the country of Dominica operating its Internal Medicine Foundation program at 2300 SW 145th Avenue, Suite 200, Miramar, Florida, 33027, and maintaining administrative offices in the United States located at 485 Route 1 South, Building B, Floor 4, Iselin, New Jersey 08830.

3.      Defendant DeVry University, Inc. is an Illinois company with a principal place of business at 3005 Highland Parkway, Downers Grove, Illinois 60515.

4.      Defendant DeVry Education Group, Inc., is a Delaware company with a principal place of business at 3005 Highland Parkway, Downers Grove, Illinois 60515.

5.      RUSM is a wholly owned subsidiary of  DeVry University, Inc. and/or DeVry Education Group, Inc.  (DeVry University, Inc. and DeVry Education Group, Inc. are

hereinafter referred to collectively as "DeVry"; RUSM and DeVry are hereinafter referred to collectively as "Defendants").

6.      At all relevant times, Defendants were soliciting business and doing business with in the state of Connecticut.

## JURISDICTION AND VENUE

7.      This Court has jurisdiction pursuant to 28 U.S.C. § 1331 in that this action involves a federal question arising under the Constitution, laws, or treaties of the United States. This Court also has jurisdiction pursuant to 28 U.S.C. § 1332 because Plaintiff is a Connecticut citizen and Defendant is citizen of a different state or of a foreign state, and the amount in controversy, exclusive of interest and costs, exceeds $75,000.

8.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because Plaintiff is a Connecticut resident and a substantial part of the events or omissions giving rise to the claims occurred in this District.

## STATEMENT OF FACTS

9.  In May 1999, Mr. Burke graduated from the University of Vermont, obtaining a bachelor's degree in Psychology.

10.      On July 30, 2001, while driving to work at Yale University where he was employed as a neuroscience researcher, Mr. Burke suffered severe traumatic brain injuries when a large metal object originating from a commercial truck crashed through the front windshield of his car, hitting him directly in the head and crushing the front of his skull.  Mr. Burke was rendered unconscious, and emergency responders took Mr. Burke to Bridgeport Hospital where a scan revealed bilateral subdural hematomas and frontal contusions and lacerations to the brain.  He underwent emergency neurosurgery with evacuation of the hematomas.  Thereafter, Mr. Burke

underwent a cranioplasty, implanting titanium plates and 25 four millimeter metal screws to reconstruct the front portion of his skull.  The accident nearly cost Mr. Burke his life.

11.     Since these severe neurological injuries Mr. Burke has suffered from symptoms typical of traumatic brain injuries including, but not limited to, post-concussion symptoms including severe headaches.  Magnetic resonance imaging continues to show scarring, shrinkage, and encephalomalacia in both frontal lobes.

12.     Despite the severity of his traumatic brain injuries, Mr. Burke endeavored over the next few years to fully recover and qualify himself for acceptance to medical school to fulfill a lifelong dream.

13.     In May 2003, Mr. Burke completed Temple University's post-baccalaureate pre-medical program.

14.     In August 2004, Mr. Burke matriculated at the Universidad Autonoma de Guadalajara Facultad de Medicina, in Guadalajara, Jalisco, Mexico, where he studied for nearly three years.

15.     Mr. Burke entered RUSM as a transfer medical student in May 2007.

16.     Introductory coursework for transfer students arriving at RUSM consists of the Advanced Introduction to Clinical Medicine ("AICM") clerkship.

17.     Mr. Burke's first clinical clerkship at RUSM was difficult for him.  From May 14, 2007, to August 4, 2007, Mr. Burke completed the AICM clerkship, but did not receive a passing grade.

18.     Mr. Burke repeated the AICM clerkship between September and November 2007, and received a passing grade of B, and was evaluated as "above average" in each of the four components of the clerkship;  knowledge of medical sciences, knowledge of assigned patients,

professionalism and character.  Thereafter Mr. Burke did exceptionally well in his clinical

clerkships at RUSM, generally receiving evaluations of "outstanding" or "above average,"

including in some of RUSM's most challenging clinical clerkships such as internal medicine,

surgery, obstetrics and gynecology, anesthesiology, psychiatry, neurology and neurosurgery.

19.     In addition to clinical coursework, RUSM requires students to complete three

required examinations before graduation;  USMLE Steps 1 and 2 CS  ("Clinical Skills") and 2 CK

While at RUSM, Mr. Burke completed two of three required examinations, USMLE Steps 1 and 2

CS, with only USMLE Step 2 CK remaining for graduation.

20.     On July 31, 2008, Mr. Burke attempted for the first time the United States

Medical Licensing Examination ("USMLE") step 1.  He failed the examination.

21.     On November 18, 2008, Mr. Burke again attempted the USMLE step 1.

Although he did not pass, he improved his score significantly.

22.     On March 14, 2009, Mr. Burke attempted the USMLE Step 1 exam a third

time and passed.

23.     From June 15, 2009, through July 25, 2009, Mr. Burke voluntarily enrolled in

Medical Gross Anatomy, a six-week summer program at the University of Vermont College of

Medicine.  He earned a passing score (71%).  Following completion of this program, he did not

begin his next clinical clerkship until August 17, 2009.

24.     From August 17, 2009, to September 25, 2009, Mr. Burke completed a

RUSM clinical clerkship in obstetrics and gynecology, receiving a letter grade of A and "excellent"

in all evaluative metrics.

25.     From October 12, 2009, to January 1, 2010, Mr. Burke completed a RUSM clinical clerkship in medicine, and received a letter grade of A and "excellent" in all evaluative metrics.

26.     From January 4, 2010, to February 12, 2010, Mr. Burke completed a RUSM clinical clerkship in family medicine, and received a letter grade of A and "excellent" in all evaluative metrics.

27.     From March 1, 2010, through March 26, 2010, Mr. Burke completed a RUSM clinical clerkship in anesthesiology, and received a letter grade of A and "excellent" in all evaluative metrics.

28.     From April 5, 2010, through April 16, 2010, Mr. Burke completed a RUSM clinical clerkship in gastroenterology, and received a letter grade of A and "excellent" or "above average" in all evaluative metrics.

29.     From May 10, 2010, through June 18, 2010, Mr. Burke completed a RUSM clinical clerkship in pediatrics, and received a letter grade of A and "excellent" or "above average" in all evaluative metrics.

30.     From July 19, 2010, through August 13, 2010, Mr. Burke completed a RUSM clinical clerkship in physiatry, and received a letter grade of A and "excellent" or "above average" in all evaluative metrics.

31.     From September 13, 2010, through December 3, 2010, Mr. Burke completed a RUSM clinical clerkship in surgery, and received a letter grade of A and "excellent" or "above average" in all evaluative metrics.

32.     From January 3, 2011, to January 28, 2011, Mr. Burke completed a RUSM clinical clerkship in neurology, and received a letter grade of A and "outstanding" or "very good" in all evaluative metrics.

33.     In February 2011, Mr. Burke suffered from acute, incapacitating psychiatric symptoms resulting, in all likelihood, from his previous accident, traumatic brain injury and the resulting neurological impact.  As a result of his incapacitation, with some assistance, Mr. Burke applied for and was granted a medical leave of absence from RUSM due to the onset of this condition effective January 28, 2011.  At the same time, Mr. Burke entered treatment with a board-certified neuropsychiatrist, who supported and documented Mr. Burke's need for a medical leave from RUSM to enable him to receive intensive treatment.

34.     Following gradual amelioration of symptoms, Mr. Burke returned to RUSM from his medical leave but periodically saw his treating neuropsychiatrist for ongoing monitoring and further evaluation.

35.     From March 14, 2011, through April 8, 2011, Mr. Burke completed a RUSM clinical clerkship in emergency medicine, and received a letter grade of A and "outstanding" or "very good" in all evaluative metrics.

36.     From April 25, 2011, through May 20, 2011, Mr. Burke completed a RUSM clinical clerkship in cardiology, and received a letter grade of B and "outstanding," "very good," or "satisfactory" in all evaluative metrics, and was identified as a "motivated student" and "a pleasure to teach."

37.     From June 20, 2011, through July 29, 2011, Mr. Burke completed a RUSM clinical clerkship in psychiatry, and received a letter grade of A and "outstanding" or "very good" in all evaluative metrics.

38.     On December 6, 2011, Mr. Burke attempted for the first time the USMLE Step 2 CS examination and passed.

39.     From January 1, 2012, to January 31, 2012, Mr. Burke completed a RUSM clinical clerkship in neurosurgery, and received a letter grade of A and "outstanding" or "very good" in all evaluative metrics.

40.     Due to administrative delays, RUSM did not schedule Mr. Burke for clinical clerkship during February or March 2012.

41.     From April 23, 2012, to May 18, 2012, Mr. Burke completed a RUSM clinical clerkship in neurology, and received a letter grade of B+ and "outstanding," "very good," or "satisfactory" in all evaluative metrics.

42.     In May and June 2012, Mr. Burke suffered a recurrence of the incapacitating neuropsychiatric condition that first manifested itself in February 2011, and again sought intensive treatment from his treating neuropsychiatrist.

43.     Notwithstanding the very recent episode, in an attempt to complete his degree requirements and not reschedule a previously scheduled exam date, Mr. Burke attempted the USMLE Step 2 CK examination for the first time on July 6, 2012.  He did not pass.

44.     After receiving his results from the USMLE Step 2 CK exam, Mr. Burke e-mailed the RUSM Chief Academic Officer on September 7, 2012, to inform Defendants that he had scheduled a second attempt for the USMLE Step 2 CK later that month.  Plaintiff also requested additional time for an additional attempt on the exam, if necessary.

45.     On September 30, 2012, Mr. Burke attempted the USMLE Step 2 CK a second time and did not pass.

46.     In October and November 2012, Mr. Burke re-identified himself to Defendants as a student with a disability, owing to his 2001 traumatic brain injury and the related neuropsychiatric condition for which he required medical leave in 2011 and 2012.  At the same time, Mr. Burke requested approval for an additional attempt at the Step 2 CK exam as a reasonable accommodation under the ADA.

47.     On November 13, 2012, Mr. Burke wrote to Defendant and provided further information supporting his request, including a letter from his treating neuropsychiatrist, a diplomat of the American Board of Psychiatry and Neurology and former member of the clinical faculty of the Yale School of Medicine, Department of Psychiatry.  The letter stated that Mr. Burke required treatment in the winter of 2011 and the summer of 2012 for an incapacitating neuropsychiatric condition and also indicated that, as Mr. Burke's treating neuropsychiatrist, he fully supported the request for accommodation.

48.     Mr. Burke required additional time to complete his final degree requirement due to the loss of study time due to his incapacitation, RUSM's delays in scheduling clinical clerkships, and the persistence of certain symptoms consistent with traumatic brain injuries.

49.     On October 25, 2012, Mr. Burke's brother e-mailed the Associate Dean of Student Affairs on Mr. Burke's behalf.  Mr. Burke had previously provided RUSM authorization to communicate with his brother on his behalf. Mr. Burke's brother's e-mail explicitly identified Mr. Burke's request as a request for accommodation made under the ADA.

50.     Notwithstanding the previous requests for accommodation from both Mr. Burke and his brother, on November 16, 2012, the Associate Dean of Student Affairs wrote to Mr. Burke and advised him that she was unaware of any request for accommodation made to

Defendants.  In doing so, Defendants violated their duty to engage in a good faith dialogue and unlawfully ignored Mr. Burke's requests for accommodation under the ADA.

51.     The Associate Dean of Student Affairs stated that, as a result, Mr. Burke would be administratively withdrawn (dismissed), purportedly for "failing to take and pass Step 2 within the allocated time."

52.     During this period, Mr. Burke's brother spoke with the Associate Dean of Student Affairs by telephone.  In a polite conversation, he identified himself as an attorney with experience in the areas of civil rights and higher education law and explained that Mr. Burke's request for accommodation was appropriate under the law and should be granted.

53.     On November 27, 2012, the Associate Dean of Student Affairs wrote to Mr. Burke as follows:  "After carefully reviewing your academic history and correspondence with the school, Ross University School of Medicine (RUSM) will allow you additional time to sit for the USMLE Step 2 CK."

54.     On July 19, 2013, Mr. Burke e-mailed the Associate Dean of Student Affairs and indicated that he was requesting an accommodation from NBME with respect to testing conditions.  The Associate Dean of Student Affairs responded via e-mail approving the request for an extension and stating, "Please take the exam no later than December 31, 2013."

55.     Mr. Burke subsequently requested an accommodation from the NBME with respect to testing conditions (time and a half for testing with breaks after each block), due to attention deficit-hyperactivity disorder.  Mr. Burke's request for accommodation by the NBME was denied.

56.     Thereafter, RUSM suggested that Mr. Burke withdraw from RUSM and reapply for admission with a request to retake USMLE Step 2 CK.  Relying on this advice, Mr. Burke withdrew on February 26, 2014 and reapplied.

57.     On March 31, 2014, Mr. Burke was readmitted to RUSM and received a readmission letter stating that he was "being re-accepted to take the USMLE, Step 2/CK."

58.     The readmission letter also notified Mr. Burke, for the first time, of a new time requirement with respect to graduation, stating "You must successfully complete all graduation requirements within 7 years of matriculation, which means by May 31, 2014."  This new seven-year rule did not exist at the time Mr. Burke was originally admitted to RUSM, or during his time spent completing coursework or clinical clerkships or previous USMLE steps.

59.     Prior to Mr. Burke's withdrawal and readmission, the May 31, 2014 time constraint was not applicable to Mr. Burke.  Upon information and belief, Defendants improperly suggested that Mr. Burke withdraw and reapply in order to subject Mr. Burke to this new RUSM policy allegedly requiring completion of all RUSM degree requirements within 7 years of matriculation.

60.     In doing so, Defendants ignored the fact that Mr. Burke was matriculating for a second time upon his readmission, and further ignored his requests for accommodation and their obligations under the ADA.

61.     The readmission letter was also clear that Mr. Burke's only remaining graduation requirement was to take and pass the USMLE Step 2 CK.

62.     On May 28, 2014, Mr. Burke took USMLE Step 2 CK but did not pass.

63.     On August 12, 2014, RUSM wrote to Mr. Burke advising him that the RUSM Student Promotions Committee had dismissed him for failure to complete required degree

requirements within seven years of matriculation.  This seven-year rule did not exist at the time Mr. Burke originally matriculated to RUSM or during the time he spent completing RUSM clinical clerkships or previous USMLE steps.  The dismissal letter gave no indication of the basis for the seven-year rule or how it might pertain to any academic or licensure requirement.

64.     In August 2014, Mr. Burke appealed the decision of the RUSM Student Promotions Committee.  In his appeal, Mr. Burke re-identified himself as a student with a disability, owing to his 2001 traumatic brain injury and the related neuropsychiatric condition for which he required medical leave in 2011 and 2012.  Mr. Burke supported his appeal and accommodation request with documentation from his medical providers.

65.     On September 7, 2014, the chair of the RUSM Student Promotions Committee, Dr. Robert Mucciola, wrote to Mr. Burke to advise him that after consideration of the appeal, he would be reinstated to RUSM.  The letter further stated that he must sit and pass USMLE Step 2 CK by May 31, 2015, or he would be dismissed.  The letter indicated that this was the final extension, and no further extensions would be considered or granted.  The letter did not, however, refer to the seven-year rule; nor did it provide any basis for the choice of May 31, 2015 as the deadline.  The letter also did not explain why the extension granted should be "final."

66.     The RUSM Student Handbook allows students up to six attempts at each USMLE step examination.  Dr. Mucciola's September 7 letter did not reference this provision of the Handbook.

67.     On May 29, 2015, Mr. Burke attempted USMLE Step 2 CK and did not pass, but received a score which was very nearly a passing score and nearly 20 points greater than any previous attempt.

68.     On June 26, 2015, the RUSM Student Promotions Committee wrote to Mr. Burke informing him that he had been dismissed.  The sole articulated basis for the dismissal was "[f]ailure to complete all required degree requirements within seven (7) years of matriculation."

69.     Based on his dates of passing USMLE Step 1 and USMLE Step 2 CS, the Educational Commission for Foreign Medical Graduates ("ECFMG") has established that Mr. Burke has until March 14, 2016, to complete USMLE Step 2 CK with a passing score to obtain an ECFMG certificate for licensure.  Moreover, many states within the United States allow for licensure after completing USMLE Step 2 CK on a fifth or sixth attempt.

70.     In addition, there is value to Mr. Burke in simply receiving his medical degree after years of study and hundreds of thousands of dollars spent.

71.     Mr. Burke appealed the dismissal decision to the RUSM Promotions Committee in July 2015.  In his appeal he requested additional time to take the examination as a reasonable accommodation under the ADA.

72.     Mr. Burke supported his request with information from his physicians documenting his disabling condition.  He also pointed out that the seven-year rule was announced and applied to him for the first time upon readmission and matriculation in March 2014, and had not been in effect when he was first admitted to RUSM, nor when he was completing RUSM clinical clerkships.  Mr. Burke also pointed out in his appeal that due to RUSM's own delays in scheduling his clinical clerkships, the total of his active enrollment at RUSM since his first date of matriculation was actually less than seven years.  Plaintiff also argued that any seven year requirement should be calculated from his readmission, not his original matriculation, especially as there was no such requirement applicable to his original matriculation.  Mr. Burke also pointed out that under the then-current RUSM Student Handbook, he should be allowed two more attempts to

pass the Step 2 CK (six attempts total), and that based on his dates of passing USMLE Step 1 and USMLE Step 2 CS, the ECFMG has established that Mr. Burke has until March 14, 2016, to complete USMLE Step 2 CK with a valid score for an ECFMG certificate for licensure.

73.     RUSM did not review Mr. Burke's appeal at the Promotions Committee's July meeting, but deferred it for review at the August meeting.  On August 17, 2015, Dr. Mucciola wrote to Mr. Burke and stated that RUSM's dismissal decision was upheld.  RUSM provided no explanation whatsoever for the decision.

74.      Defendants did not acknowledge the accommodation request, let alone provide a basis for denial of accommodation.  Defendants did not respond in any way to Mr. Burke's questioning the application of the seven-year rule.  Defendants did not acknowledge that the seven-year rule had not applied at the time Mr. Burke originally matriculated to RUSM. Defendants did not provide any academic or license-related justification to the seven-year rule and did not reference RUSM's Student Handbook, including the policy which would have allowed Mr. Burke two more attempts at the exam, nor ECFMG's having established that Mr. Burke had until March 14, 2016 to complete USMLE Step 2 CK to be eligible for licensure.  Defendants did not provide any explanation for why Mr. Burke should be considered to have been a student for seven years when in fact he withdrew and was readmitted and, due to RUSM's own delays in scheduling his clinical clerkships, he should have been considered to have been enrolled for less than seven years in any event.

75.     In or around this time, Mr. Burke again suffered from an incapacitating psychiatric condition.  From August 14 to August 28, 2015, Mr. Burke voluntarily entered inpatient treatment for a recurrence of the condition for which he required leave and treatment in 2011, 2012 and thereafter.

76.     During this hospitalization Mr. Burke was diagnosed with a range of neuropsychiatric disorders.

77.     During this period of hospitalization, Mr. Burke's brother requested an extension of the time to submit an appeal on his behalf of the Promotions Committee Decision to the RUSM Dean.  Mr. Burke's brother also requested information relevant to the Promotions Committee review and decision to aid in the preparation of the appeal for his brother.

78.     RUSM denied the request for information except to provide the minimum of what is required to provide under the Family Educational Rights and Privacy Act, 20 U.S.C. section 1232g, *et seq.*  Moreover, an attorney for DeVry Educational Group, which owns RUSM, also wrote to Mr. Burke's brother and demanded that he cease correspondence with RUSM administrators regarding his brother's status at RUSM, notwithstanding the fact that Mr. Burke at the time was undergoing inpatient care that restricted his access to telephones and computers, and had authorized and asked his brother, an attorney, to communicate with RUSM regarding these issues.

79.     On September 15, 2015, Mr. Burke appealed the RUSM Promotions Committee's to the RUSM Dean.  In his appeal, he again supported his request with information from his physicians documenting his disabling condition.  He pointed out that the seven-year rule was announced and applied to him for the first time upon readmission in March 2014, and had not been in effect when he was first admitted to RUSM and when he was completing his RUSM clinical clerkships.  Mr. Burke noted in his appeal that due to RUSM's own delays in scheduling his clinical clerkships, he had not actually been actively enrolled in RUSM work for seven years since his first date of matriculation.  Mr. Burke also noted that under the current RUSM Student Handbook, he should be allowed two more attempts to pass Step 2 CK (six attempts total), and that based on his

dates of passing USMLE Step 1 and USMLE Step 2 CS, the ECFMG has established that Mr.

Burke has until March 14, 2016, to complete USMLE Step 2 CK with a passing score for licensure.

80.     On September 30, 2015, RUSM Dean Joseph A. Flaherty, M.D., denied Mr.

Burke's appeal.  The body of letter stated in full:

> I have carefully reviewed your academic record, your appeal of the Student
> Promotions Committee's recommendation for dismissal, and your pre-matriculation
> credentials. I concur with the Promotion Committee's decision to dismiss you from
> Ross University School of Medicine effective September 30, 2015. I hope you do not
> let this detour keep you from achieving your goal of helping people in need.

81.     As is clear from the quotation above, Dean Flaherty's letter provided no

explanation whatsoever for his decision.  The letter did not acknowledge Plaintiff's requests for

accommodation under the ADA, let alone provide a basis for denial of the requested

accommodations.  The letter did not respond in any way to Mr. Burke's questioning the application

of the seven-year rule.  The letter did not acknowledge that the seven-year rule had not applied at

the time Mr. Burke originally matriculated to RUSM or during the period in which he completed his

coursework, clerkships, and previous USMLE steps.  It did not provide any academic or license-

related justification to the seven-year rule and made no mention of or reference to RUSM's Student

Handbook; the policy in which would have allowed Mr. Burke two more attempts at the exam; or

ECFMG's having established that Mr. Burke had until March 2016 to complete USMLE Step 2 CK

to be eligible for licensure.  The letter did not provide any explanation as to why Mr. Burke should

be considered to have been a student for seven years when in fact, due to his withdrawal and

readmission and RUSM's own delays in scheduling his clinical clerkships, he ought not to have

been considered as enrolled for less than seven years.

82.     Moreover, the letter was particularly egregious insofar as it suggested that

dismissing Mr. Burke at that final stage of his medical education was a mere "detour".

83.     In a subsequent telephone discussion Plaintiff had with the Senior Associate Dean for Academic Affairs, she confirmed the only basis for dismissal was the alleged seven-year rule.  RUSM at no time offered any other explanation for its decision, let alone any analysis of Plaintiff's request for accommodation.

84.     In sum, on at least three occasions Mr. Burke formally requested an accommodation in the form of being allowed to take USMLE Step 2 CK for a fifth attempt.  Despite the fact that up to six attempts are explicitly allowed under RUSM policy as set forth in the current Student Handbook, any such request was denied each time, without explanation or analysis.

85.     The denial of Mr. Burke's requests for accommodation, without analysis or explanation, is emblematic of discriminatory, arbitrary and capricious decision-making.

86.     Upon information and belief, RUSM, as a for-profit institution, is without support staff sufficient to accommodate student disability requests as it is required to under federal law.  Upon information and belief, RUSM does not have support staff comparable to that which is provided at not-for-profit public and private institutions of higher education within the United States.

87.     Upon information and belief, Defendants purposefully do not devote resources to addressing student disability requests because as a for-profit institution it wishes to minimize costs.

88.     Defendants ignored their obligations under the ADA, failed to engage in a good faith dialogue, ignored Mr. Burke's requests for accommodation and specifically, in 2015, RUSM's Promotions Committee and Dean failed to acknowledge and/or acted with deliberate indifference with respect to Mr. Burke's request for accommodation.

**COUNT I – INJUNCTIVE RELIEF (VIOLATION OF THE AMERICANS WITH DISABILITIES ACT ("ADA"), AS AMENDED, 42 U.S.C. § 12101, *ET SEQ.*)**

89. Plaintiff incorporates the allegations set forth in paragraphs 1 through 88 by reference as if fully set forth herein.

90. As a result of his traumatic brain injuries and subsequent debilitating neuropsychiatric conditions, Plaintiff is a qualified individual with a disability as that term is defined in the Americans with Disabilities Act ("ADA"), as amended, 42 U.S.C. § 12101, *et seq.*, and Section 504 of the Rehabilitation Act of 1973 ("Section 504"), 29 U.S.C. § 794.

91. RUSM is a public accommodation subject to the ADA's requirements and Defendants are obligated to consider requests for accommodation, engage in a good faith dialogue, and offer their disabled students reasonable accommodations under the ADA.

92. But for the USMLE Step 2 CK, Plaintiff has completed each and every graduation requirement, including USMLE Step 1 and Step 2 CS, as well as all didactic and clinical coursework.

93. Plaintiff requested a reasonable accommodation from Defendants under the ADA to permit him additional time to complete the USMLE Step 2 CK exam.

94. Defendants denied Plaintiff's request for a reasonable accommodation under the ADA, and acted with deliberate indifference in doing so.

95. Defendants acted with deliberate indifference in ignoring Plaintiff's requests for reasonable accommodations under the ADA, including by refusing to certify him to sit for the USMLE Step 2 CK exam, and by failing to provide specific reasons or justifications for doing so.

96. In doing so, Defendants denied Plaintiff the opportunity to participate in or benefit from RUSM's programs or otherwise discriminated against Plaintiff, in violation of the ADA.

97.     By virtue of the foregoing conduct, Defendants unreasonably failed to accommodate Plaintiff; denied him the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of a place of public accommodation; and otherwise discriminated against Plaintiff on the basis of a disability.

98.     Plaintiff's requested accommodation would require no major commitment of resources or modification of academic requirements.  The accommodation requested by Plaintiff would not fundamentally alter what RUSM offers.

99.     Plaintiff will suffer irreparable harm if he is not given an accommodation and permitted to sit for the USMLE Step 2 CK on or before March 14, 2016.

100.    Absent injunctive relief requiring RUSM to certify Plaintiff and permit him to sit for the USMLE Step 2 CK on or before March 14, 2016, Plaintiff faces a substantial likelihood of irreparable harm insofar as he will not be eligible for licensure and the ECFMG will not recognize his passing scores on the USMLE Step 1 and USMLE Step 2 CS.

101.    Any harm to RUSM from such an injunction would be minimal at best. Plaintiff is merely requesting additional time to complete his sole remaining academic requirement. The proposed remedy would not cause a change to any academic requirements.  RUSM will not have to allocate any significant resources to implement the injunctive relief requested; RUSM's registrar would simply certify Plaintiff as eligible to sit for USMLE Step 2 CK on or before March 14, 2016.

102.    Due to the unique circumstances surrounding Plaintiff's situation, the granting of the requested relief is unlikely to have any precedential effect.

103.     Plaintiff is likely to succeed on the merits of his claim because RUSM willfully ignored Plaintiff's reasonable requests for an accommodation under the ADA, or acted with deliberate indifference thereto.

104.     The public interest weighs in favor of granting the injunctive relief requested because Plaintiff seeks a remedy established in clear public policy, specifically, Title III of the ADA.

## COUNT II – INJUNCTIVE RELIEF (VIOLATION OF SECTION 504 OF THE REHABILITATION ACT OF 1973 ("SECTION 504"), 29 U.S.C. § 794)

105.     Plaintiff incorporates the allegations set forth in paragraphs 1 through 90 by reference as if fully set forth herein.

106.     As a result of his traumatic brain injuries and subsequent debilitating neuropsychiatric conditions, Plaintiff is a qualified individual with a disability as that term is defined in the ADA and Section 504 of the Rehabilitation Act of 1973 ("Section 504"), 29 U.S.C. § 794.

107.     As recipients of federal financial educational funding, Defendants are obligated to comply with the requirements of Section 504.

108.     In ignoring Plaintiff's requests for reasonable accommodation, refusing to extend the length of time for Plaintiff to complete degree requirements; and specifically refusing to certify him and permit him to sit for the USMLE Step 2 CK exam; Defendants denied Plaintiff the right to participate in or benefit from RUSM's programs or otherwise violated Section 504.

109.     By virtue of the foregoing conduct, Defendants discriminated against Plaintiff on the basis of a disability and denied him the opportunity to participate in or benefit from the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of a place of public accommodation in violation of Section 504.

110. Absent injunctive relief requiring RUSM to permit Plaintiff to sit for the USMLE Step 2 CK exam on or before March 14, 2016, Plaintiff faces a substantial likelihood of irreparable harm insofar as he will not be eligible for licensure and the ECFMG will not recognize his passing scores on the USMLE Step 1 and USMLE Step 2 CS.

111. Any harm to Defendants from the requested injunctive relief is minimal at best. Plaintiff is merely requesting additional time to complete his sole remaining academic requirement.

112. RUSM will not have to change any academic requirement or allocate any significant resources to implement the injunctive relief requested; RUSM's registrar would simply certify Plaintiff as eligible to sit for USMLE Step 2 CK on or before March 14, 2016.

113. Due to the unique circumstances surrounding Plaintiff's situation, the granting of the requested relief is unlikely to have any precedential effect.

114. Plaintiff is likely to succeed on the merits of his claim because Defendants willfully ignored Plaintiff's reasonable requests for accommodation under Section 504, or acted with willful indifference thereto.

115. The public interest weighs in favor of granting the injunctive relief requested because Plaintiff seeks a remedy established in clear public policy, specifically, Title III of the ADA and Section 504.

## COUNT III – MONEY DAMAGES (VIOLATION OF SECTION 504 OF THE REHABILITATION ACT OF 1973 ("SECTION 504"), 29 U.S.C. § 794)

116.    Plaintiff incorporates the allegations set forth in paragraphs 1 through 115 by reference as if fully set forth herein.

117.    As a result of his traumatic brain injuries and subsequent debilitating neuropsychiatric conditions, Plaintiff is a qualified individual with a disability as that term is defined in the ADA and Section 504.

118.    As recipients of federal financial educational funding, Defendants are obligated to comply with the requirements of Section 504.

119.    In ignoring Plaintiff's requests for reasonable accommodation; refusing to extend the length of time for Plaintiff to complete degree requirements; and specifically refusing to certify him and permit him to sit for the USMLE Step 2 CK exam, Defendants denied Plaintiff the opportunity to participate in or benefit from RUSM's programs or otherwise discriminated against Plaintiff due to his disability.

120.    By virtue of the foregoing conduct, Defendants discriminated against Plaintiff on the basis of a disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of a place of public accommodation.

121.    By virtue of the foregoing conduct, Defendants violated Section 504.

122.    By virtue of the foregoing conduct, Plaintiff suffered harm and is entitled to damages, including money damages.

**COUNT IV – PROMISSORY ESTOPPEL**

123.     Plaintiff incorporates the allegations set forth in paragraphs 1 through 88 by reference as if fully set forth herein.

124.     Defendants made clear and unambiguous promises to the Plaintiff in the policies and procedures set forth in Student Handbook, including that a student shall be given up to six attempts to pass a USMLE or similar examination.

125.     Defendants should reasonably have expected to cause Plaintiff to rely upon the promises set forth in the RUSM Student Handbook.

126.     Plaintiff did actually rely upon on the promises set forth in the RUSM Student Handbook, to his detriment.

127.     Defendants subsequently reneged on their promises by refusing to allow Plaintiff a fifth attempt to pass the USMLE step 2 CK exam.

128.     An injustice can be avoided only by enforcing the promises set forth in the RUSM Student Handbook that Plaintiff be given up to six attempts to pass USMLE step 2 CK and that he not be required to complete the degree requirements within seven years of his first matriculation.

129.     Plaintiff suffered damages as a result of the foregoing conduct.

**COUNT V – BREACH OF CONTRACT**

130.    Plaintiff incorporates the allegations set forth in paragraphs 1 through 88 by reference as if fully set forth herein.

131.    Plaintiff and Defendants entered into a valid contract.

132.    Plaintiff fully performed pursuant to the contract.

133.    By virtue of the foregoing conduct, Defendants breached the contract when they arbitrarily dismissed Plaintiff.

134.    Plaintiff suffered harm as a result of Defendants breach, thereby entitling him to damages.

**COUNT VI – BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING**

135.    Plaintiff incorporates the allegations set forth in paragraphs 1 through 134 by reference as if fully set forth herein.

136.    By virtue of the foregoing conduct, Defendants breached the covenant of good faith and fair dealing when it dismissed Plaintiff.

137.    Plaintiff suffered damage as a result of Defendants' breach.

**JURY DEMAND**

A jury trial is demanded as to all claims triable to a jury

**WHEREFORE**, the Plaintiff respectfully requests that this Court:

1.    Enter an immediate Order requiring Defendants to certify Plaintiff and permit him to sit for the USMLE Step 2 CK examination on or before March 14, 2016;

2.    Enter judgment in favor of Plaintiff and against Defendants, and award Plaintiff compensatory damages, including pursuant to Section 504 of the Rehabilitation Act of 1973 ("Section 504"), 29 U.S.C. § 794;

3.    Award Plaintiff costs and attorneys' fees to the fullest extent permitted by law; and

4.    Grant such other and further relief as this Court deems just and equitable.

THE PLAINTIFF,


By _____ /s/ ct18688_____
　　　　Francis D. Burke-ct18688
　　　　MANGINES & BURKE, LLC
　　　　41 North Main Street, Ste. 204
　　　　West Hartford, CT 06107
　　　　Tel. (860) 233-1000
　　　　Fax: (860) 523-9235
　　　　fburke@aol.com




## **CERTIFICATION**

I hereby certify that on January 25, 2016, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF system.



　　　　/s/  ct18688_____
　　　Francis D. Burke  ct18688