UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| BRENDAN BURKE, : | |
| : | CIVIL ACTION No.: |
| Plaintiff, : | |
| v. : | |
| : | |
| ROSS UNIVERSITY SCHOOL OF : | |
| MEDICINE, DEVRY UNIVERSITY, INC., : | |
| and DEVRY EDUCATION GROUP, INC : | |
| Defendants. : | JANUARY 25, 2016 |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S
EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER**

**NATURE OF THE CASE**

This is a civil-rights action brought against a for-profit educational institution that wilfully ignored on multiple occasions Plaintiff Brendan Burke's rights under the Americans with Disabilities Act ("ADA"), as amended, 42 U.S.C. § 12101, *et seq.*, and Section 504 of the Rehabilitation Act of 1973 ("Section 504"), 29 U.S.C. § 794.  Plaintiff seeks an order requiring Defendants to provide him with a reasonable accommodation by certifying him and allowing him to sit for the United States Medical Licensing Examination ("USMLE") Step 2 CK on or before March 14, 2016, the deadline under Educational Commission for Foreign Medical Graduates' ("ECFMG") policy for Plaintiff to complete the USMLE Step 2 CK.  Given the imminent deadline, and because a period of three to seven weeks are required to register for the exam, time is of the essence.

Defendants Ross University School of Medicine ("RUSM"), DeVry University, Inc. and/or DeVry Education Group, Inc. failed to address Plaintiff's requests for accommodation and dismissed Plaintiff under a fabricated rule allegedly mandating that all degree requirements be

completed within seven years of matriculation. This rule did not exist at the time Plaintiff matriculated at RUSM in 2007 – indeed, RUSM did not even announce it until 2014, after Plaintiff had completed and passed all of his required coursework, and had withdrawn and been re-admitted at RUSM's suggestion. Most importantly, the alleged rule bears no connection to any core academic or license-related requirement. Thus, even if it were a legitimately established policy, it is precisely the kind of rule that under federal law an educational institution is obligated to modify if a qualified person with a disability seeks an accommodation. Plaintiff accordingly seeks to compel Defendant to permit and certify Plaintiff to sit for the United States Medical Licensing Examination ("USMLE") Step 2 CK on or before March 14, 2016, the deadline under Educational Commission for Foreign Medical Graduates ("ECFMG") policy for Plaintiff to complete USMLE Step 2 CK. The requested relief would not constitute a modification of the nature and substance of RUSM's academic program. Further, Plaintiff's request for additional time to complete degree requirements is precisely the form of remedy considered reasonable under the law.

## FACTUAL BACKGROUND

1. Plaintiff was formerly enrolled as a medical student at Defendant Ross University School of Medicine ("RUSM"). RUSM is a wholly-owned subsidiary of Defendants DeVry University, Inc. and/or DeVry Education Group, Inc. Plaintiff is a qualified individual with a disability as that term is used in the ADA and Section 504 of the Rehabilitation Act. In July 2001, Plaintiff suffered severe traumatic brain injuries as a result of an automobile accident. Since suffering these severe neurological injuries, Mr. Burke has experienced symptoms typical of traumatic brain injuries including but not limited to post-concussion symptoms. In addition, at various times, Plaintiff suffered from incapacitating psychiatric symptoms. These symptoms

required Plaintiff to take a medical leave from RUSM in 2011, were totally incapacitating for another period in 2012, and required hospitalization in 2015.  Nevertheless, Plaintiff overcame these injuries and illnesses to qualify for acceptance to medical school, and complete all coursework and clinical clerkships.

2. RUSM is a for-profit medical school which purports to have an administrative and business address in New Jersey but which is in fact a Caribbean medical school, headquartered in Dominica. RUSM is owned by Defendants DeVry University, Inc. and/or DeVry Education Group, Inc., publicly held, for-profit companies located in Illinois.

3. RUSM is a public accommodation as that term is defined by the Americans with Disabilities Act ("ADA"), as amended, 42 U.S.C. § 12101, *et seq.*, and section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, and is therefore obligated to offer its students reasonable accommodations under the law.  As a recipient of federal financial educational funding, RUSM also is obligated to comply with Section 504.

4. Mr. Burke entered RUSM as a transfer medical student on May 2007. Since entering RUSM, Plaintiff has completed all coursework, predominantly with evaluations indicating he is an "outstanding" or "above average," motivated student.  Plaintiff also passed the United States Medical Licensing Examination ("USMLE") Step 1 on March 14, 2009, and USMLE Step 2 Clinical Skills ("CS") on December 6, 2011.

5. Plaintiff's final graduation requirement is the USMLE Step 2 Clinical Knowledge ("CK").  RUSM has certified Plaintiff four times to attempt USMLE Step 2 CK. RUSM policy, as set forth in its Student Handbook, allows up to six attempts at USMLE Step 2 CK before graduation.

6. The National Board of Medical Examiners ("NBME") administers the USMLE. Pursuant to ECFMG policy, Plaintiff must complete USMLE Step 2 CK within seven years of the date he passed USMLE Step 1 in order for his passing scores on USMLE Step 1 and Step 2 CS to remain valid to obtain an ECFMG certificate for licensure. Plaintiff accordingly has until March 14, 2016, to pass USMLE Step 2 CK.

7. In October and November 2012, Plaintiff made his first request for accommodation to RUSM with respect to the scheduling of a third attempt on USMLE Step 2 CK. Plaintiff wrote to the RUSM Senior Associate Dean for Academic Affairs seeking an accommodation and identified himself as a student with a disability, owing to his 2001 traumatic brain injury and the related neuropsychiatric condition for which he required medical leave in 2011 and 2012. On November 13, 2012, Mr. Burke wrote to RUSM's Senior Associate Dean for Academic Affairs and provided further support for this request in the form of a letter from his treating neuropsychiatrist, a diplomat of the American Board of Psychiatry and Neurology and former member of the clinical faculty of the Yale School of Medicine, Department of Psychiatry. The doctor's letter stated that Mr. Burke required treatment in the winter of 2011 and the summer of 2012 for an incapacitating neuropsychiatric condition during those periods. Mr. Burke's doctor also stated that he fully supported the request for accommodation.

8. On October 25, 2012, Mr. Burke's brother, an attorney, wrote to the Senior Associate Dean for Academic Affairs. Brendan Burke had previously provided RUSM with notice that his brother was acting as his representative and authorizing RUSM to speak to his brother. Mr. Burke's brother's e-mail to the Senior Associate Dean for Academic Affairs explicitly identified his brother's request for accommodation as a request for accommodation

made under the ADA. Mr. Burke's brother also asked the Senior Associate Dean for Academic Affairs for the opportunity to discuss the matter further.

9. On November 16, 2012, the Senior Associate Dean for Academic Affairs wrote to Mr. Burke and, notwithstanding Mr. Burke's and his brother's previous communications with her, advised Mr. Burke that she was unaware of any request for accommodation made to RUSM. This communication ignored Mr. Burke's request for accommodation which was explicitly identified as a request for accommodation under the ADA by Mr. Burke's brother. The Senior Associate Dean for Academic Affairs stated that Plaintiff would be administratively withdrawn (dismissed) allegedly for "failing to take and pass Step 2 within the allocated time."

10. During this period, Plaintiff's brother spoke with the Senior Associate Dean for Academic Affairs by telephone. In a cordial conversation he identified himself as an attorney practicing in the areas of civil rights and higher education law and explained that in his experience his brother's request for accommodation was appropriate under the law and should be granted.

11. On November 27, 2012, the Senior Associate Dean for Academic Affairs wrote to Plaintiff as follows: "After carefully reviewing your academic history and correspondence with the school, Ross University School of Medicine (RUSM) will allow you additional time to sit for the USMLE Step 2 CK. You must sit for the exam by May 31, 2013."

12. Plaintiff's third attempt at USMLE Step 2 CK was delayed by his submitting a request for accommodation to the NBME. Plaintiff sought an accommodation with respect to the time allotted for the examination itself, due to attention-deficit and hyperactivity disorder. This request was denied by NBME. In conferring with the Senior Associate Dean for

Academic Affairs regarding the NBME decision, she suggested to Mr. Burke that he withdraw from RUSM and reapply for admission with a request to retake USMLE Step 2 CK. Acting on the advice of the Senior Associate Dean for Academic Affairs, Mr. Burke requested withdrawal on February 26, 2014 and reapplied.

13. On March 31, 2014, Mr. Burke was readmitted to RUSM. The readmission letter states: "Congratulations! We are pleased to inform you that you have been re-accepted to Ross University School of Medicine. You are being re-accepted to take the USMLE, Step 2/CK."

14. The readmission letter also introduced for the first time a time requirement with respect to graduation, stating "You must successfully complete all graduation requirements within 7 years of matriculation, which means by May 31, 2014." This seven-year rule did not exist at the time Mr. Burke was first admitted to RUSM, or during his time spent completing clinical clerkships or previous USMLE steps. The readmission letter made clear that Mr. Burke's only remaining graduation requirement was to take and pass USMLE Step 2 CK: "You will be required to pass the USMLE, Step 2/CK to be eligible for graduation."

15. On May 28, 2014, Mr. Burke completed his third attempt at USMLE Step 2 CK, but did not pass.

16. On August 12, 2014, RUSM wrote to Mr. Burke advising him that the RUSM Student Promotions Committee had dismissed him for failure to complete required degree requirements within seven years of matriculation. This seven-year rule did not exist at the time Mr. Burke first matriculated to RUSM or during the time he spent completing RUSM clinical clerkships or previous USMLE steps. The seven-year rule was established only after Mr. Burke matriculated to RUSM for the second time in 2014. The dismissal letter gave no

indication of the basis for the seven-year rule or how it might pertain to any academic or licensure requirement.

17. In August 2014, Mr. Burke appealed the decision of the RUSM Student Promotions Committee. In his appeal, Mr. Burke re-identified himself as a student with a disability, owing to his 2001 traumatic brain injury and the possibly related psychiatric condition for which he required medical leave in 2011 and 2012. Mr. Burke's supported his accommodation request with documentation from his medical providers.

18. On September 7, 2014, the chair of the RUSM Student Promotions Committee, Dr. Robert Mucciola, wrote to Mr. Burke to advise him that after consideration of the appeal, he would be reinstated to RUSM. The letter further stated that he must sit and pass USMLE Step 2 CK by May 31, 2015, or he would be dismissed. The letter indicated that the extension which was granted was final. The letter did not, however refer to the seven-year rule, nor did it provide any basis for fixing May 31, 2015, as the deadline. The letter also did not explain why the extension granted should be "final."

19. On May 29, 2015, Mr. Burke attempted USMLE Step 2 CK and did not pass, but received a very nearly passing score which was nearly 20 points greater than previous attempts.

20. On June 26, 2015, the RUSM Student Promotions Committee wrote to Mr. Burke informing him that he had been dismissed. The sole articulated basis for the dismissal was "[f]ailure to complete all required degree requirements within seven (7) years of matriculation."

21. The RUSM Student Handbook allows students up to six attempts at each USMLE step examination. *See* http://medhandbook.rossu.edu/wp-

content/uploads/2015/09/RUSM-Student-Handbook-20151.pdf, at 27.  Dr. Mucciola's September 7 letter did not reference this provision of the Handbook.  In addition, based on his dates of passing USMLE Step 1 and USMLE Step 2 CS, under ECFMG policy, Plaintiff has until March 14, 2016, to complete USMLE Step 2 CK with a valid score for a certificate for licensure.

22. Mr. Burke appealed the dismissal decision to the RUSM Promotions Committee in July 2015.  In his appeal he requested additional time to take the examination as a reasonable accommodation under the ADA.  Mr. Burke supported his request with information from his physicians documenting his disabling condition.  He also pointed out that the seven-year rule which was announced and applied to him for the first time upon readmission in March 2014 had not been in effect when he was first admitted to RUSM, nor when he was completing RUSM clinical clerkships.  Mr. Burke pointed out in his appeal that due to RUSM's own delays in scheduling his clinical clerkships, he had not actually been actively enrolled in RUSM work for seven years since his first date of matriculation.  Mr. Burke also pointed out that under the current RUSM Student Handbook, he should be allowed two more attempts to pass Step 2 CK (six attempts total), and that based on his dates of passing USMLE Step 1 and USMLE Step 2 CS, the ECFMG has established that Mr. Burke has until March 14, 2016, to complete USMLE Step 2 CK with a valid score for a certificate for licensure.

23. RUSM did not review his appeal at the Promotions Committee's July meeting, but deferred it for review at the August meeting.  On August 17, 2015, Dr. Mucciola wrote to Mr. Burke and stated the dismissal decision was upheld.  The letter provided no explanation of any kind for the decision.  The letter did not even acknowledge the accommodation request or respond to a single point made by Plaintiff in his appeal.

24.     On September 15, 2015, Mr. Burke appealed the RUSM Promotions Committee's decision to the RUSM dean.  In his appeal, he again supported his request with information from his physicians documenting his disabling condition.  He again pointed out that the seven-year rule which was announced and applied to him for the first time upon readmission in March 2014 had not been in effect when he first matriculated to RUSM, nor when he was completing RUSM clinical clerkships.  Plaintiff again noted in his appeal that due to RUSM's own delays in scheduling his clinical clerkships, he had not actually been actively enrolled in RUSM work for seven years since his first date of matriculation.  Plaintiff again noted that under RUSM's own Student Handbook, he should be allowed two more attempts to pass Step 2 CK (six attempts total), and that based on his dates of passing USMLE Step 1 and USMLE Step 2 CS, under ECFMG policy he has until March 14, 2016, to complete USMLE Step 2 CK with a valid score for a certificate for licensure.

25.     On September 30, 2015 RUSM Dean Joseph A. Flaherty, M.D., denied Plaintiff's appeal.  Dean Flaherty's letter stated in full:

> I have carefully reviewed your academic record, your appeal of the Student Promotions Committee's recommendation for dismissal, and your pre-matriculation credentials. I concur with the Promotion Committee's decision to dismiss you from Ross University School of Medicine effective September 30, 2015. I hope you do not let this detour keep you from achieving your goal of helping people in need.

26.     Like Dr. Mucciola's letter, Dean Flaherty's letter provided no explanation whatsoever for his decision, nor any response to any single point made by Plaintiff in his appeal. Dean Flaherty's letter also did not even acknowledge the request for accommodation with respect to modifying RUSM's alleged seven-year rule.

27.     In a subsequent telephone discussion Plaintiff had with the Senior Associate Dean for Academic Affairs, she confirmed the only basis for dismissal was the alleged

seven-year rule. RUSM at no time offered any other explanation for its decision, let alone any analysis of Plaintiff's request for accommodation. Moreover, RUSM did not explain how this rule would apply to Plaintiff given his second matriculation in 2014 upon readmission.

## ARGUMENT

In considering a motion for a temporary restraining order, this Court applies the same standard applicable to a motion for a preliminary injunction. *See Local 1814, Int'l Longshoremen's Ass'n v. New York Shipping Ass'n,* 965 F.2d 1224, 1228 (2d Cir. 1992). A party seeking a preliminary injunction is required to show "(a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." *Citigroup Global Mkts. Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 (2d Cir. 2010). Where a mandatory preliminary injunction is sought that alters the status quo by commanding some positive act, a party seeking a preliminary injunction is required to show "irreparable harm and . . . likelihood of success on the merits." *Id.*

Here, Plaintiff faces irreparable harm because in the absence of injunctive relief he will be unable to take USMLE Step 2 CK before March 14, 2016, which is required in order for his previous USMLE step scores to remain valid under ECFMG policy. In addition, Plaintiff will in all likelihood succeed on the merits because RUSM's denial of his request for accommodation in the form of additional time to complete degree requirements (by passing the test) is *per se* reasonable under federal regulations promulgated under Section 504.

### A. Plaintiff Will Be Irreparably Harmed Without Injunctive Relief.

Plaintiff passed USMLE Step 1 on March 14, 2009. According to ECFMG policy, Plaintiff has only until March 14, 2016, to pass USMLE Step 2 CK in order for his

USMLE Step 1 and USMLE Step 2 CS scores to remain valid for licensure.  The forfeiture of Plaintiff's valid, passing scores on USMLE Step 1 and USMLE Step 2 CS would require Plaintiff to restart his medical education, at the age of 39, after having completed all required coursework and all required licensing examinations, save the one that is the subject of this motion for injunctive relief.

      **B.**      **Plaintiff Will Succeed on the Merits Because His Request for an Accommodation With Respect to the Length of Time to Complete USMLE Step 2 CK Was Reasonable.**

Plaintiff's request for an accommodation is *per se* reasonable under the law, as it relates not to any core academic requirement, but rather only seeks an extension of time permitted to complete degree requirements.

To establish a *prima facie* violation under Title III of the ADA and Section 504, a plaintiff must demonstrate "(1) that she is a 'qualified individual' with a disability; (2) that the defendants are subject to one of the Acts; and (3) that she was 'denied the opportunity to participate in or benefit from defendants' . . . programs . . . or [was] otherwise discriminated against by defendants . . ." *Powell v. Nat'l Bd. of Med. Examiners*, 364 F.3d 79, 85 (2d Cir. 2004) (citing *Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003)).[1]

Title III of the Americans With Disabilities Act provides:  "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods,

---

[1] It should be pointed out that the requirement that a Title III plaintiff demonstrate that he or she is a "qualified individual" is actually an error – it represents the importation into a Title III analysis of a requirement that actually exists only in the ADA's Title I, pertaining to employment, *see* 42 U.S.C. § 12111(8); *see also Singh v. George Washington Univ. School of Med.*, 508 F.3d 1097, 1105 (D.C. Cir. 2007) ("We first note legal uncertainty as to whether a Title III plaintiff must be 'otherwise qualified' . . . Title III of the ADA contains neither the phrase 'otherwise qualified' nor 'qualified individual,' but such phrases are in Titles I and II, as well as in the Rehabilitation Act.").  Given that RUSM was prepared to graduate Plaintiff had Plaintiff passed USMLE Step 2 CK on a previous

services, facilities, privileges, advantages, or accommodations of any place of public accommodation." 42 U.S.C. § 12182(a). The failure to make reasonable accommodations constitutes unlawful discrimination under Title III. 42 U.S.C. § 12182(b)(2)(A)(ii). The regulations implementing Title III provide that:

> A public accommodation shall make reasonable modifications in policies, practices, or procedures, when the modifications are necessary to afford goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the public accommodation can demonstrate that making the modifications would fundamentally alter the nature of the goods, services, facilities, privileges, advantages, or accommodations.

28 C.F.R. § 36.302(a).

In assessing the strength of these accommodation requirements, the United States Supreme Court has held that they are to be applied without exception: "Title III of the [ADA] requires without exception that any 'policies, practices, or procedures' of a public accommodation be reasonably modified for disabled 'individuals' as necessary to afford access unless doing so would fundamentally alter what is offered." *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 688, 121 S. Ct. 1879, 1896, 149 L. Ed. 904, 927 (2001) (citing 42 U.S.C. § 12182(b)(2)(A)(ii)).

Similarly, Section 504 provides: "No otherwise qualified individual with a disability . . . shall solely by reason of her or his disability, be excluded from the participation in . . . or be subject to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). The United States Department of Education, Office of Civil Rights ("OCR"), has promulgated pursuant to Section 504 regulations pertaining to

---

attempt, it would be absurd for them to argue that he is now unqualified to be a medical student, so the point may be immaterial for the purpose of this matter.

accommodation requirements as they apply to postsecondary education.  These regulations provide as follows:

> (a) Academic requirements.  A recipient to which this subpart applies shall make such modifications to its academic requirements as are necessary to ensure that such requirements do not discriminate or have the effect of discriminating, on the basis of handicap, against a qualified handicapped applicant or student.  Academic requirements that the recipient can demonstrate are essential to the instruction being pursued by such student or to any directly related licensing requirement will not be regarded as discriminatory within the meaning of this section. ***Modifications may include changes in the length of time permitted for the completion of degree requirements*,** substitution of specific courses required for the completion of degree requirements, and adaptation of the manner in which specific courses are conducted.

34 C.F.R. § 104.44(a) (emphasis added).  This regulation has been cited with approval, as authority, by the United States Court of Appeals for the Second Circuit.  *See Rothschild v. Grottenthaler*, 907 F.2d 286, 293 (2d Cir. 1990).

In reviewing disability claims brought by medical students, the Courts of Appeals have consistently applied the structure set forth in the OCR regulation, distinguishing between the essential exercise of academic judgment by an institution with respect to core requirements, which courts are loathe to second-guess, and the length of time permitted to complete degree requirements, about which institutions are required under law to be flexible.  In *Singh v. George Washington Univ.*, 508 F.3d 1097 (D.C. Cir. 2007), the plaintiff appealed a judgment after a bench trial for the defendant; the circuit court reversed and remanded.  The basis for remand essentially was twofold:  First, the circuit court held, the plaintiff should be considered impaired, and therefore covered by the ADA and Section 504.  *Id.* at 1104-05.  Second, the failure to accommodate the plaintiff where the plaintiff's request would have required no major commitment of resources or modification of academic requirements was unreasonable.  *Id.* at 1105.  By contrast, in *Powell*, the unsuccessful plaintiff had sought to compel the University of

Connecticut School of Medicine to waive entirely its requirement that she pass USMLE Step 1. *Powell*, 364 F.3d at 81.  The court held that the plaintiff's request "would have changed the nature and substance of UConn's program." *Id.* at 88.  The court also noted that the defendant had made extensive efforts at accommodation – none of which were shown by RUSM, in this case – "[t]he school supplied tutors for [Powell], excused an honor code violation ostensibly because of its sympathy for her high level of stress, allowed her to remain matriculated without paying tuition, and gave her multiple opportunities to remediate classes that she had previously failed." *Id.* at 87-88.

In this case, Plaintiff has not asked for a waiver of any academic requirement; instead, he made a timely request only for an extension of the length of time to complete his final degree requirement.  Specifically, he seeks to be allowed until March 14, 2016, to complete USMLE Step 2 CK.  This is the amount of time allowed by the ECFMG.  It would not constitute a modification of the nature and substance of RUSM's academic program in any way.  Indeed, RUSM policy, as set forth in the RUSM Student Handbook, allows up to *six* attempts on USMLE Step 2 CK and Step CS.  *See* http://medhandbook.rossu.edu/wp-content/uploads/2015/09/RUSM-Student-Handbook-20151.pdf, at 25.  Most notably, Plaintiff's request for additional time to complete degree requirements is precisely the form of remedy considered reasonable by OCR in its Section 504 regulations.  *See* 34 C.F.R. § 104.44 ("Modifications may include changes in the length of time permitted for the completion of degree requirements.").

Finally, the absence of any explanation for Defendant RUSM's decision or, for that matter, any analysis supporting a decision to deny a request for accommodation, is evidence that RUSM's dismissal decision was preordained and perfunctory, and arbitrary and capricious.

*See Strom Siegel Fenchel & Peddy P.C. Profit Sharing Plan*, 497 F.3d 234, 243 (2d Cir. 2007) (Sotomayor, J.) (holding that plan administrator's decision was arbitrary and capricious and not entitled to deference where decision was offered without interpretation or explanation).

### C.  The Injunctive Relief Plaintiff Seeks Presents No Harm to Defendant.

The remedy requested will impose no harm on Defendant RUSM.  The remedy would not cause a change to any academic requirement; indeed, Plaintiff's only request is to be allowed additional time to complete his sole remaining academic requirement.  RUSM will not have to allocate any resources to implement injunctive relief if required.  Its registrar would simply certify Plaintiff as eligible to sit for USMLE Step 2 CK on or before March 14, 2016.

### D.  The public interest weighs in favor or injunctive relief here.

Finally, the public interest weighs in favor of granting the requested relief.  Plaintiff seeks a remedy established in clear public policy, in Title III of the ADA and Section 504.  Issuance of an injunction would uphold the public policy embodied in these acts.  On the other hand, RUSM cannot cite any public interest that supports their position.  It is not being asked to waive any academic requirement, only to comply with the law.

### CONCLUSION

WHEREFORE, for the foregoing reasons, the court should enter a temporary restraining order in Plaintiff's favor, compelling RUSM to certify him as eligible and allow him to sit for the USMLE Step 2 CK on or before March 14, 2016.

THE PLAINTIFF,

By  \_\_\_\_\_/s/  ct18688_____
Francis D. Burke-ct18688
MANGINES & BURKE, LLC
41 North Main Street, Ste. 204
West Hartford, CT 06107
Tel. (860) 233-1000
Fax: (860) 523-9235
fburke@aol.com

**CERTIFICATION**

I hereby certify that on January 25, 2016, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF system.

_____/s/  ct18688_____
Francis D. Burke  ct18688