UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| BRENDAN BURKE, | : | |
| | : | CIVIL ACTION No.: |
| Plaintiff, | : | |
| v. | : | |
| | : | |
| ROSS UNIVERSITY SCHOOL OF | : | |
| MEDICINE, DEVRY UNIVERSITY, INC., | : | |
| and DEVRY EDUCATION GROUP, INC., | : | |
| Defendants. | : | JANUARY 17, 2016 |

**DECLARATION OF BRENDAN BURKE IN SUPPORT OF**
**EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER**

I, Brendan Burke, hereby declare pursuant to 28 U.S.C. § 1746 as follows:

1. I am the plaintiff and make this declaration in connection with the Complaint and Motion for Emergency Temporary Restraining Order filed in the above-captioned lawsuit.

2. I am a Connecticut citizen domiciled in Darien, Connecticut.

3. In May 1999, I graduated from the University of Vermont, obtaining a bachelor's degree in Psychology.

4. On July 30, 2001, while driving to work at Yale University where I was employed as a neuroscience researcher, I suffered severe traumatic brain injuries when a large metal object originating from a commercial truck crashed through the front windshield of my car, hitting me directly in the head fracturing the front of my skull and crushing it inward. Emergency responders took me to Bridgeport Hospital where a scan revealed bilateral subdural hematomas and frontal contusions to the brain. I underwent emergency neurosurgery with evacuation of the hematomas. Thereafter, I underwent cranioplasty implanting a titanium plate fixed to my skull with 25 four

millimeter metal screws to reconstruct the front portion of my skull. The accident nearly cost me my life.

5. Since these severe neurological injuries I have suffered from symptoms typical of traumatic brain injuries including but not limited to post-concussion symptoms including severe headaches. Magnetic resonance imaging of my brain continues to show scarring, shrinkage, and encephalomalacia in both frontal lobes.

6. Despite these severe traumatic brain injuries, I endeavored over the next few years to fully recover and qualify for acceptance to medical school to fulfill a lifelong dream.

7. In May 2003, I completed Temple University's post-baccalaureate pre-medical program.

8. In August 2004, I matriculated at the Universidad Autonoma de Guadalajara Facultad de Medicina, in Guadalajara, Jalisco, Mexico, where I studied for nearly three years.

9. I entered RUSM as a transfer medical student in May 2007.

10. Introductory coursework for transfer students arriving at RUSM consists of the Advanced Introduction to Clinical Medicine ("AICM") clerkship.

11. My first clinical clerkship at RUSM was difficult. From May 14, 2007, to August 4, 2007, I completed the AICM clerkship, but did not receive a passing grade.

12. I repeated the AICM clerkship between September and November 2007, and received a passing grade of B, and was evaluated as "above average" in each of the four components of the clerkship: knowledge of medical sciences, knowledge of assigned patients, professionalism and character. Thereafter I did exceptionally well in my clinical clerkships at RUSM, generally receiving evaluations of "outstanding" or "above average," including in some of RUSM's most challenging clinical clerkships, including but not limited to, internal medicine,

surgery, obstetrics and gynecology, anesthesiology, psychiatry, neurology and neurosurgery.

13. In addition to clinical coursework, RUSM requires students to complete USMLE Steps 1, 2 Clinical Skills ("CS") and 2 CK before graduation. I have completed two of three required examinations, USMLE Steps 1 and 2 CS, with only USMLE Step 2 CK remaining for graduation.

14. On July 31, 2008, I attempted for the first time the United States Medical Licensing Examination ("USMLE") step 1. I failed the examination.

15. On November 18, 2008, I attempted for the second time USMLE step 1, and again did not pass, but improved my score significantly.

16. On March 14, 2009, I attempted the USMLE Step 1 exam a third time and passed.

17. From June 15, 2009, through July 25, 2009, I enrolled voluntarily in a six-week summer Medical Gross Anatomy program at the University of Vermont College of Medicine, in which I earned a passing score (71%). Following completion of this program, I did not begin my next clinical clerkship until August 17, 2009.

18. From August 17, 2009, to September 25, 2009, I completed a RUSM clinical clerkship in obstetrics and gynecology, receiving a letter grade of A and "excellent" in all evaluative metrics.

19. From October 12, 2009, to January 1, 2010, I completed a RUSM clinical clerkship in medicine, and received a letter grade of A and "excellent" in all evaluative metrics.

20. From January 4, 2010, to February 12, 2010, I completed a RUSM clinical clerkship in family medicine, and received a letter grade of A and "excellent" in all evaluative metrics.

21. From March 1, 2010, through March 26, 2010, I completed a RUSM clinical clerkship in anesthesiology, and received a letter grade of A and "excellent" in all evaluative

metrics.

22. From April 5, 2010, through April 16, 2010, I completed a RUSM clinical clerkship in gastroenterology, and received a letter grade of A and "excellent" or "above average" in all evaluative metrics.

23. From May 10, 2010, through June 18, 2010, I completed a RUSM clinical clerkship in pediatrics, and received a letter grade of A and "excellent" or "above average" in all evaluative metrics.

24. From July 19, 2010, through August 13, 2010, I completed a RUSM clinical clerkship in physiatry, and received a letter grade of A and "excellent" or "above average" in all evaluative metrics.

25. From September 13, 2010, through December 3, 2010, I completed a RUSM clinical clerkship in surgery, and received a letter grade of A and "excellent" or "above average" in all evaluative metrics.

26. From January 3, 2011, to January 28, 2011, I completed a RUSM clinical clerkship in neurology, and received a letter grade of A and "outstanding" or "very good" in all evaluative metrics.

27. In February 2011, I suffered from acute, incapacitating psychiatric symptoms of uncertain etiology but in all likelihood, related to my previous traumatic brain injury and its neurological impact. As a result of this incapacitation, with some assistance, I applied for and was granted a retroactive medical leave of absence from RUSM due to the onset of this condition effective January 28, 2011. At the same time, I entered treatment with a board-certified neuropsychiatrist, who supported and documented my need for a medical leave from RUSM to enable me to receive intensive treatment.

28. Following gradual amelioration of symptoms, I returned to RUSM from medical leave but periodically saw my treating neuropsychiatrist for ongoing monitoring and further evaluation.

29. From March 14, 2011, through April 8, 2011, I completed a RUSM clinical clerkship in emergency medicine, and received a letter grade of A and "outstanding" or "very good" in all evaluative metrics.

30. From April 25, 2011, through May 20, 2011, I completed a RUSM clinical clerkship in cardiology, and received a letter grade of B and "outstanding," "very good," or "satisfactory" in all evaluative metrics, and was identified as a "motivated student" and "a pleasure to teach."

31. From June 20, 2011, through July 29, 2011, I completed a RUSM clinical clerkship in psychiatry, and received a letter grade of A and "outstanding" or "very good" in all evaluative metrics.

32. On December 6, 2011, I attempted for the first time the USMLE Step 2 CS examination and passed.

33. From January 1, 2012, to January 31, 2012, I completed a RUSM clinical clerkship in neurosurgery, and received a letter grade of A and "outstanding" or "very good" in all evaluative metrics.

34. Due to administrative delays, RUSM did not schedule me for any clinical clerkship during February or March 2012.

35. From April 23, 2012, to May 18, 2012, I completed a RUSM clinical clerkship in neurology, and received a letter grade of B+ and "outstanding," "very good," or "satisfactory" in all evaluative metrics.

36. In May and June 2012, I suffered a recurrence of the incapacitating psychiatric

condition that first manifested itself in February 2011, for which I again sought treatment from my treating neuropsychiatrist.

37. Notwithstanding the recent psychiatric episode, in an attempt to complete degree requirements, and not reschedule a previously scheduled exam date, on July 6, 2012, I attempted for the first time the USMLE Step 2 CK examination, but did not pass.

38. After receiving my results from the USMLE Step 2 CK exam, on September 7, 2012, I e-mailed the RUSM Chief Academic Officer to inform RUSM that I had scheduled a second attempt for USMLE Step 2 CK later that month, and also sought permission for time for an additional attempt on the exam, if necessary.

39. On September 30, 2012, I attempted USMLE Step 2 CK a second time and did not pass.

40. In October and November 2012, I identified myself to RUSM as a student with a disability, owing to my 2001 traumatic brain injury and the related neuropsychiatric condition for which I required medical leave in 2011 and 2012 and requested approval for an additional attempt at Step 2 CK as a reasonable accommodation under the ADA. On November 13, 2012, I wrote to Defendant and provided further information for this request by providing a letter from my treating neuropsychiatrist who was a diplomat of the American Board of Psychiatry and Neurology and a member of the clinical faculty of the Yale School of Medicine, Department of Psychiatry. The letter stated that I required treatment in the winter of 2011 and the summer of 2012 from an incapacitating neuropsychiatric condition and also indicated that as my treating neuropsychiatrist he fully supported the request for accommodation.

41. I required additional time to complete my final degree requirement due to the loss of study time due to incapacitation, RUSM's delays in scheduling clinical clerkships and the

persistence of certain symptoms consistent with traumatic brain injuries.

42. On October 25, 2012, my brother, acting on my behalf, e-mailed the RUSM Senior Associate Dean for Academic Affairs, after I had provided RUSM with authorization to speak to him. My brother's e-mail to the RUSM Senior Associate Dean for Academic Affairs explicitly identified my request for accommodation as a request for accommodation made under the ADA.

43. Notwithstanding my and my brother's previous communications to the RUSM Senior Associate Dean for Academic Affairs requesting an accommodation, on November 16, 2012, the RUSM Senior Associate Dean for Academic Affairs wrote to me and advised me that she was unaware of any request for accommodation made to RUSM. This communication ignored my request for accommodation which was explicitly identified as a request for accommodation under the ADA by my brother. The RUSM Senior Associate Dean for Academic Affairs stated that as a result, I would be administratively withdrawn (dismissed) purportedly for "failing to take and pass Step 2 within the allocated time."

44. During this period, my brother spoke with the RUSM Senior Associate Dean for Academic Affairs by telephone. He identified himself as an attorney practicing in the areas of civil rights and higher education law and explained that in his experience my request for accommodation was appropriate under the law and should be granted.

45. On November 27, 2012, the RUSM Senior Associate Dean for Academic Affairs wrote to me as follows: "After carefully reviewing your academic history and correspondence with the school, Ross University School of Medicine (RUSM) will allow you additional time to sit for the USMLE Step 2 CK."

46. On July 19, 2013, I e-mailed the RUSM Senior Associate Dean for Academic Affairs, and indicated that I was requesting an accommodation from NBME with respect to testing

7

conditions. The RUSM Senior Associate Dean for Academic Affairs responded via e-mail approving the request for an extension and stating, "Please take the exam no later than December 31, 2013."

47. I subsequently requested an accommodation from the NBME with respect to testing conditions (time and a half for testing with breaks after each block), due to attention deficit-hyperactivity disorder. My request for accommodation by the NBME was denied.

48. In February 2014, RUSM suggested that I withdraw from RUSM and reapply for admission with a request to retake USMLE Step 2 CK. Relying on this advice, I withdrew on February 26, 2014 and reapplied.

49. On March 31, 2014, I was readmitted to RUSM and received a readmission letter stating that I was "being re-accepted to take the USMLE, Step 2/CK."

50. The readmission letter also notified me of a new time requirement with respect to graduation, stating "You must successfully complete all graduation requirements within 7 years of matriculation, which means by May 31, 2014." This new seven-year rule did not exist at the time I was originally admitted to RUSM, or during the time I spent completing clinical clerkships or previous USMLE steps.

51. Prior to my withdrawal and readmission, the May 31, 2014 time constraint was not applicable to me.

52. In addition, RUSM ignored the fact that I matriculated for a second time after my readmission.

53. The readmission letter was also clear that my only remaining graduation requirement was to take and pass USMLE Step 2 CK.

54. On May 28, 2014, I took USMLE Step 2 CK but did not pass.

55. On August 12, 2014, RUSM wrote to me advising me that the RUSM Student Promotions Committee had dismissed me for failure to complete required degree requirements within seven years of matriculation. This seven-year rule did not exist at the time I originally matriculated to RUSM or during the time I spent completing RUSM clinical clerkships or previous USMLE steps. The dismissal letter gave no indication of the basis for the seven-year rule or how it might pertain to any academic or licensure requirement.

56. In August 2014, I appealed the decision of the RUSM Student Promotions Committee. In my appeal, I identified myself as a student with a disability, owing to my 2001 traumatic brain injury and the related neuropsychiatric condition for which I required medical leave in 2011 and 2012 and ongoing treatment. I supported the appeal and accommodation request with documentation from my medical providers.

57. On September 7, 2014, the chair of the RUSM Student Promotions Committee, Dr. Robert Mucciola, wrote to me to advise me that after consideration of the appeal, I would be reinstated to RUSM. The letter further stated that I must sit and pass USMLE Step 2 CK by May 31, 2015, or I would be dismissed. The letter indicated that the extension granted was final. The letter did not however refer to the seven-year rule, nor did it provide any basis for the choice of May 31, 2015, as the deadline. The letter also did not explain why the extension granted should be "final."

58. The RUSM Student Handbook allows students up to six attempts at each USMLE step examination. Dr. Mucciola's September 7 letter did not reference this provision of the Handbook.

59. On May 29, 2015, I attempted USMLE Step 2 CK and did not pass, but received a score which was very nearly a passing score and was a 17 point increase from my previous attempt.

9

60. On June 26, 2015, the RUSM Student Promotions Committee wrote to me informing me that I had been dismissed. The sole articulated basis for the dismissal was "[f]ailure to complete all required degree requirements within seven (7) years of matriculation."

61. Based on my dates of passing USMLE Step 1 and USMLE Step 2 CS, under Educational Commission for Foreign Medical Graduates ("ECFMG") rules, I have only until March 14, 2016, to complete USMLE Step 2 CK with a passing score to obtain an ECFMG certificate that is accepted for licensure. Moreover, many states within the United States allow for licensure after completing USMLE Step 2 CK on a fifth or sixth attempt.

62. Finally, there is value to me in simply receiving the doctor of medicine degree.

63. I appealed the dismissal decision to the RUSM Promotions Committee in July 2015. In the appeal I requested additional time to take the examination as a reasonable accommodation under the ADA. I supported the request with information from my physicians documenting my disabling condition. I also pointed out that the seven-year rule was announced and applied to me upon readmission and matriculation in March 2014 had not been in effect when I was first admitted to RUSM, nor throughout the time I was completing RUSM clinical clerkships. I pointed out in the appeal that due to RUSM's own delays in scheduling my clinical clerkships, I had not actually been actively enrolled in RUSM work for seven years since the first date of matriculation. Moreover, the seven years should be calculated from my readmission, not my original matriculation. I pointed out that under the current RUSM Student Handbook, I should be allowed two more attempts to pass Step 2 CK (six attempts total), and that based on my dates of passing USMLE Step 1 and USMLE Step 2 CS, under ECFMG rules I have until March 14, 2016, to complete USMLE Step 2 CK with a valid score for licensure.

64. RUSM did not review my appeal at the Promotions Committee's July meeting, but

deferred it for review at the August meeting. On August 17, 2015, Dr. Mucciola wrote to me and stated that RUSM's dismissal decision was upheld. RUSM provided no explanation whatsoever for the decision. RUSM did not acknowledge my accommodation request, let alone provide a basis for denial of accommodation. RUSM did not respond in any way to my questioning the application of the seven-year rule. RUSM did not acknowledge that the seven-year rule had not applied at the time I originally matriculated to RUSM. RUSM did not provide any academic or license-related justification to the seven-year rule, and did not reference RUSM's Student Handbook, the policy in which would have allowed me two more attempts, nor ECFMG's having established that I have until March 14, 2016 to complete USMLE Step 2 CK to be eligible for licensure. RUSM did not provide any explanation for why I should be considered to have been a student for seven years when in fact I withdrew and was readmitted and moreover, due to RUSM's delays in scheduling my clinical clerkships I ought not to have been considered enrolled for seven years in any event.

65. In or around this time, I again suffered from an incapacitating psychiatric condition and from August 14 to August 28, 2015, I entered voluntarily inpatient treatment due to recurrence of the condition for which I required leave and treatment in 2011 and 2012.

66. During this hospitalization I was diagnosed with Bipolar Disorder.

67. During my hospitalization, my brother requested an extension of the time to submit on my behalf an appeal of the Promotions Committee Decision to the RUSM Dean. My brother also requested information relevant to the Promotions Committee review to aid in the preparation of my appeal.

68. RUSM denied the request for information except to provide a copy of my current student record. Moreover, an attorney for DeVry Educational Group, which owns RUSM, also wrote to my brother and demanded that he cease correspondence with RUSM administrators

11

regarding my status, notwithstanding the fact that at the time I was undergoing inpatient care that restricted my access to telephones and computers, and my brother was my sole authorized representative to communicate with RUSM regarding these issues.

69. On September 15, 2015, I appealed the RUSM Promotions Committee's decision to the RUSM Dean. In the appeal, I again supported my request with information from my physicians documenting my disabling condition. I pointed out that the seven-year rule was announced and applied to me for the first time in 2014 and had not been in effect when I was first admitted to RUSM, nor when I was completing RUSM clinical clerkships. I noted in my appeal that due to RUSM's own delays in scheduling my clinical clerkships, I had not actually been actively enrolled in RUSM work for seven years since my first date of matriculation. I noted that under the current RUSM Student Handbook, I should be allowed two more attempts to pass Step 2 CK (six attempts total), and that based on my dates of passing USMLE Step 1 and USMLE Step 2 CS, under ECFMG rules I have until March 14, 2016, to complete USMLE Step 2 CK with a passing score.

70. On September 30, 2015, RUSM Dean Joseph A. Flaherty, M.D., denied my appeal. The body of his letter stated in full:

> I have carefully reviewed your academic record, your appeal of the Student Promotions Committee's recommendation for dismissal, and your pre-matriculation credentials. I concur with the Promotion Committee's decision to dismiss you from Ross University School of Medicine effective September 30, 2015. I hope you do not let this detour keep you from achieving your goal of helping people in need.

71. As is clear from the quotation above, Dean Flaherty's letter provided no explanation whatsoever for his decision. The letter did not acknowledge the accommodation request, let alone provide a basis for denial of accommodation. The letter did not respond in any way to my questioning the application of the seven-year rule. The letter did not acknowledge that the seven-year rule had not applied at the time I originally matriculated to RUSM or during the period in

which I completed my coursework and clerkships and previous USMLE steps. It did not provide any academic or license-related justification to the seven-year rule, and did not reference RUSM's Student Handbook, the policy in which would have allowed me two more attempts, nor ECFMG's policy allowing me until March 14, 2016 to complete USMLE Step 2 CK to be eligible for licensure. The letter did not provide any explanation of why I should be considered to have been a student for seven years when in fact due to my withdrawal and readmission and RUSM's delays in scheduling my clinical clerkships I ought not to have been considered enrolled for seven years.

72.  Moreover, the letter was particularly egregious insofar as it suggested that dismissing me at that final stage of my medical education was a mere "detour".

73.  I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 17th day of January, 2016.

*(signature)*
Brendan Burke

## **CERTIFICATION**

I hereby certify that on January 25, 2016, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF system.

                                                      /s/ ct18688
                                          Francis D. Burke  ct18688